IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-354C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint because the alleged contract in this case does not fall within the Contract Disputes Act, 41 U.S.C. § 601, et seq., ("CDA") and plaintiffs' alternative claims pursuant to the Tucker Act (28 U.S.C. § 1491) and the Indian Tucker Act (28 U.S.C. §1505) are time barred.

STATEMENT OF FACTS[1]

1. On about August 1, 1949, a project engineer with the Bureau of Reclamation ("BOR") executed the "Contract and Grant of Easement" ("the contract") between the United States and the "Indian allottees" that is the subject of this suit. Comp. 14.[2] The contract permitted the United States to construct, operate, and maintain an electric transmission line across certain lands. Id. The full text of the contract may be found in Exhibit 1 to plaintiffs' complaint.

[1] This "Statement of Facts" is based entirely upon plaintiffs' "Amended Complaint For Damages" and its attached exhibits. We assume these facts to be true only for purposes of this motion.

[2]"Comp.__" refers to a paragraph of plaintiffs' "Amended Complaint For Damages."

2. The Secretary of the Interior provisionally authorized the BOR to commence construction of the electric transmission line discussed in the contract on March 29, 1950. Comp. 15.

3. On December 17, 1951, the Commissioner of Indian Affairs ("the Commissioner") approved the transmission line right of way. Comp. 16. The map considered by the Commissioner containing the location of this right of way included a notation that it was "approved for a period not to exceed 50 years from March 29, 1950." Id.

4. The power lines erected on the allotted land by the BOR ultimately became the responsibility of the Western Area Power Administration ("WAPA"), a power marketing agency within the Department of Energy. Comp. 19. On March 30, 2000, WAPA had taken no action to amend or "renew" the contract, although it continued to maintain its electrical transmission towers in the right of way specified by the contract. Comp. 20.

5. Plaintiffs consider the contract to have been breached by WAPA's continuing use of the right of way that was the subject of the contract. Comp. 39.

6. On October 31, 2007, the Salt River Pima-Maricopa Indian Community ("the Community") sent WAPA a letter demanding that it vacate the right of way and return the land to its previous condition. See Comp., Exhibit 3. This letter also demanded damages for "trespass and related claims" in the amount of $129 million. Id.

7. Six days later, on November 6, 2007, the Community sent a letter to WAPA purporting to be a claim, pursuant to the CDA. Comp. Exhibit 4. The letter sought $9,511,372 in damages from WAPA for its failure to vacate the right of way after its "expiration . . . on March 30, 2000." Id.

8. WAPA denied the Community's purported CDA claim by letter dated February 12, 2008. Comp., Exhibit 5.

9. Plaintiffs filed their complaint with this Court on May 16, 2008.

## ARGUMENT

Because the "contract" is for an easement, "the procurement of real property in being," it is not subject to the CDA. 41 U.S.C. §602(a)(1). Thus, plaintiffs are subject to the Tucker Act's six-year statute of limitations. 28 U.S.C. § 2501. Any alleged breach of the contract, however, occurred more than six years prior to plaintiffs' suit, compelling its dismissal.

### I. The Contract Here Is Not Subject To The CDA

The CDA is applicable to contracts "entered into by an executive agency for - (1) the procurement of property, other than real property in being." 41 U.S.C. § 602(a) (emphasis added). In analyzing the meaning of this statutory phrase to determine whether procurement of a property lease should be considered a procurement of "real property in being," the United States Court of Appeals for the Federal Circuit considered the legislative history of the parallel Office of Federal Procurement Policy Act ("the Policy Act"), 41 U.S.C. § 405(a)(1). See Forman v. United States, 767 F.2d 875, 878-79 (Fed. Cir. 1985). The Senate Report relied upon by the Forman court provided in part that, "the acquisition of a fee, easements, leases, or other interests in existing buildings and land would not be subject to [the Policy Act]." 767 F.2d at 879 (quoting S.Rep. No. 93-692, 93d Cong., 2d Sess. (1974)), reprinted in U.S. Code Cong. & Ad. News 4589, 4599. The court of appeals noted that this excerpt of the report harmonized with the floor statement of a congressman, who explained that the CDA need not be applicable where eminent domain was an option for the Government. Forman, 767 F.2d at 879.

With this history in mind, the easement here should be considered "real property in being" and not be subject to the CDA. First, the easement is an "interest in existing . . . land." Forman, 767 F.2d at 879 (quoting legislative history of the Policy Act). Second, as the court of appeals noted, the demarcation line of CDA applicability appears to be whether eminent domain may be utilized to obtain the property. 767 F.2d at 879. A lease may not be created by eminent domain, id., but the Government may obtain an easement through that power. See, e.g., Nollan v. California Coastal Com'n, 483 U.S. 825, 832 (1987); Leo Sheep Co. v. United States, 440 U.S. 668, 679-80 (1979); United States v.Dow, 357 U.S. 17, 18 (1958). Accordingly, the CDA should not be applicable to an easement.[3]

## II. Plaintiffs' Tucker Act And Indian Tucker Act Claims Were Brought After The Statute Of Limitations Lapsed

### A. The Statutes Of Limitations For The Tucker Act And The Indian Tucker Act Are Six Years From Accrual Of The Claim

As an alternative to the CDA, plaintiffs invoke the Tucker Act (28 U.S.C. § 1491), and the Indian Tucker Act (28 U.S.C. §1505) as bases for the Court's jurisdiction to consider their complaint. Comp. 12. Suits brought to this Court pursuant to the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501; Martinez v. United States, 333 F.3d 1295, 1302 (Fed. Cir. 2003) (en banc). Suits brought pursuant to the Indian Tucker Act are subject to the same six-year statute of limitations as the Tucker Act. Samish Indian Nation v. United States., 419 F.3d 1355, 1369 (Fed. Cir. 2005).

[3] To the extent that plaintiffs may argue that some language in Forman may be read to apply the CDA to "initial creation" of an easement, such an argument would be flawed. The interest in property obtained in the easement was already "in being" at the time that the easement was obtained, and the language of the statutory history of the Policy Act and the eminent domain discriminator both support our reading of the CDA.

B. Plaintiffs' Contract Claims (If Any) Accrued More Than Six Years Prior To Their Claim

An individual's claim accrues, starting the statute of limitations clock, when, "all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue [in the Court of Federal Claims] for money." Martinez, 333 F.3d at 1303 (citations omitted); see also Catawba Indian Tribe of South Carolina v. United States, 982 F.2d 1564, 1570 (Fed. Cir. 1993). Here, these events occurred, at latest, on March 30, 2000.

Plaintiffs allege that the Government breached its contract with them on March 30, 2000, when it "failed to vacate and continued to occupy" the right of way. Comp. 39; Comp. Exhibit 4 (claim letter). Notably, nothing in the text of the contract refers to any contractual duty to vacate the right of way at any time. See Comp. Exhibit 1. Indeed, there was no time limit upon the grant of the right of way until the Commissioner of Indian Affairs added such proviso to the map contained in Exhibit 2 to plaintiffs' complaint. Nevertheless, we recognize that a "duty to vacate" may be an implied contractual term in cases involving Government occupation of property. See Prudential Insurance Company of America v. United States, 801 F.2d 1295, 1299-300 (Fed. Cir. 1986).[4] Thus, plaintiffs have, arguably, pled that the Government breached its contract when it failed to vacate the right of way prior to March 30, 2000.

Plaintiffs' assertion that the alleged breach of contract was a "continuing" one, see Comp. 39-40, presumably extending the statute of limitations, is not supportable. By its terms, as alleged by plaintiffs, the contract expired on March 29, 2000. Comp. 20. Thus, any breach of

[4] Prudential Insurance involved a property lease, as opposed to an easement, but, for the sake of this motion (and for the sake of this motion, alone), we will assume that its logic may apply to an easement as well.

the contract would have necessarily occurred while the contract was still in force.[5] Moreover, this case does not represent one which meets the law's definition of a "continuing claim." In Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449 (Fed. Cir. 1997), the court of appeals explained the law:

> In each . . . case[] in which a continuing claim was found . . . the plaintiff's claim could be broken down into a series of independent and distinct wrongs or events, each such wrong or event having its own associated damages. Each wrong constituted an alleged violation of a statute or regulation that accrued when that particular wrong occurred, independent of other wrongs.
>
> – – –
>
> On the other hand, [in those cases not finding a continuing claim,] plaintiffs really only pointed to one alleged wrong by the government, which accrued all at once at one point in time, even though it may have had later adverse effects.

127 F.3d at 1457. Thus, to make a "continuing claim," plaintiffs must assert "independent and distinct wrongs." See also Ariadne Fin. Servs. Pty. Ltd. v. United States, 133 F.3d 874, 879 (Fed. Cir. 1998); Simmons v. United States, 71 Fed. Cl. 188 (2006) (doctrine not applicable "when there are not multiple events").

Here, in the context of plaintiffs' breach of contract claim,[6] the only distinct event was the Government's alleged failure to vacate the right of way at the conclusion of the contract.

---

[5] Arguably, the alleged breach occurred at the last moment of March 29, 2000 when the right of way was not vacated at the end of the contract period. For simplicity, however, and because it makes no difference to the analysis herein, we utilize March 30, 2000 as the date of claim accrual, for it reflects the date that plaintiffs' claim was perfected.

[6] We express no opinion whether the plaintiffs' concurrent claims in the United States District Court for the District of Arizona, alleging the torts of trespass and nuisance, see Salt River Pima-Maricopa Indian Community, et al v. United States, No. 08-01005 (D. Ariz.); Comp. n. 1, reflect matters for which "continuing violation" allegations may be supportable. It is enough to say that the doctrine is not applicable here.

Although the damages allegedly owed to plaintiffs may increase as the power lines remain upon the right of way, this merely reflects "later adverse effects," that do not give rise to new violations. Brown Park Estates, 127 F.3d at 1457.

Plaintiffs filed their claim with the Government on November 6, 2007, more than seven years after the contract expired and their claim accrued on March 30, 2000. This lawsuit was filed on May 16, 2008, more than eight years after their claim accrued. Under either the Tucker Act or the Indian Tucker Act, plaintiffs failed to act within the six years that they were granted to do so.

In this Court, the statute of limitations is a jurisdictional barrier. John R. Sand & Gravel Co. v. United States, __U.S.__, 128 S.Ct. 750, 753-54 (2008); Soriano v. United States, 352 U.S. 270 (1957). This bar applies to all civil actions whether legal, equitable, or mixed. Kendall v. Army Board for Correction of Military Records, 996 F.2d 362 (D.C. Cir. 1993) (citing Spannaus v. United States Department of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987)); Calhoun v. Lehman, 725 F.2d 115, 116-17 (D.C. Cir. 1983). Accordingly, this Court is barred by the statute of limitations from entertaining plaintiffs' complaint.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark D. Melnick
MARK D. MELNICK
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

Attorneys for Defendant

July 28, 2008