IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 08-354C (Judge Horn) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The United States occupies an expired right-of-way over land owned by the Plaintiffs, the Salt River Pima-Maricopa Indian Community and individual Indian landowners.[1] After the right-of-way expired by its terms on March 29, 2000, rather than taking the legally required steps to renew the right-of-way, the government has continued to use the Plaintiffs' land without compensating the Plaintiffs or seeking their consent. This past May, the Plaintiffs initiated this action for breach of contract under the Contract Disputes Act ("CDA") seeking the damages rightly owed to them for the government's wrongful and continued occupation of Plaintiffs' land. In an attempt to avoid the consequences of its unlawful conduct by preventing this action from proceeding to the merits, the government seeks to dismiss Plaintiffs' Complaint for lack of jurisdiction. The grounds for this motion are wholly without merit.

The government's motion is based on two interdependent and unavailing arguments. First, the government erroneously argues that the contract that created the right-of-way at

[1] Plaintiff Salt River Pima-Maricopa Indian Community is a federally recognized Indian Tribe, and all of the land at issue is trust land situated on an Indian reservation.

issue is not subject to the CDA. This argument fails because it is well-settled that a contract establishing a new interest in land, such as the right-of-way at issue in this case, falls well within the ambit of the CDA. Accordingly, Plaintiffs have properly plead jurisdiction under the CDA.

Second, assuming the success of its first argument, the government argues that Plaintiffs' action is barred by the six year statute of limitations applicable to claims brought under the Tucker Act and/or Indian Tucker Act. This argument is equally unavailing because the continuing claim doctrine enables the Plaintiffs to recover, at an absolute minimum, for the government's ongoing, continuing wrongful conduct during the six years prior to the initiation of this action.

Because the government's arguments are interdependent, the Court must deny the motion if it finds either lacking. As the analysis below forcefully reveals, both of the government's arguments fail and the government's motion to dismiss should be denied.

## STATEMENT OF FACTS

The facts relevant to this case are stated in detail in the Plaintiffs' Complaint and are recounted here only briefly. On or about August 1, 1949, an engineer with the Bureau of Reclamation, with respect to the subject right-of-way, executed a "Contract and Grant of Easement" (the "Contract") between the United States and individual "Indian allottees." (*See* Complaint, Ex. 1.) The Contract granted the United States permission "to construct, operate and maintain an electric transmission line" across certain allotted lands, conditioned, of course, on approval by the Secretary of Interior or his delegate. (*Id.*) On December 17, 1951, Commissioner of Indian Affairs D.S. Myer approved the transmission line right-of-way by endorsing his approval upon the map of definite location (the "Map"). (*See*

Complaint, Ex. 2.) Pursuant to regulations in place at the time, Commissioner Myer's notation on the Map expressly provided that the right-of-way was "approved for a period not to exceed 50 years from March 29, 1950." (*Id.*) After the enactment of the Department of Energy Organization Act of 1977, the Bureau of Reclamation's interest in the subject right-of-way was transferred to Western Area Power Administration ("WAPA"), an agency of the United States Department of Energy.

The right-of-way expired by its terms on March 29, 2000, and WAPA did not take – and to date still has not taken – any of the steps legally required to renew it. *See, e.g.*, 25 C.F.R. part 169 (detailing the steps that must be taken to renew a right-of-way on Indian land) Instead, WAPA has unlawfully continued to occupy the Plaintiffs' land without the Plaintiffs' consent and without compensating the Plaintiffs.

On October 31, 2007, Plaintiff Salt River Pima-Maricopa Indian Community (the "Community"), a federally recognized Indian tribe acting on behalf of itself and all affected individual Indian landowners, sent WAPA a letter demanding, *inter alia*, that WAPA immediately vacate the right-of-way, remove the transmission lines, and restore the property to its original condition. (*See* Complaint, Ex. 3.) WAPA did not vacate the right-of-way or notify the Community of any intent to do so. On November 6, 2007, the Community sent a second letter, directed to the attention of WAPA's Contracting Officer, stating a certified claim under the CDA for $9,511,372. (*See* Complaint, Ex. 4.) On February 20, 2008, the Community received notice that WAPA's Contracting Officer had made a final decision to deny the Community's CDA claim. (*See* Complaint, Ex. 5.) Having exhausted the available administrative remedies, the Plaintiffs filed the instant action on May 16, 2008.

**ARGUMENT**

The government alleges that this Court lacks jurisdiction over the Plaintiffs' claims and has moved to dismiss the Plaintiffs' Complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims. In deciding this motion, the Court must accept as true all of the Plaintiffs' undisputed factual allegations and construe the facts in the light most favorable to the Plaintiffs. *Int'l Indus. Park, Inc. v. United States*, 80 Fed. Cl. 522, 526 (2008) (citations omitted). The Plaintiffs must make only a *prima facie* showing of jurisdictional facts in order to defeat the government's motion. *Id.* At this stage, the Court need not decide whether the Plaintiffs "will ultimately prevail, but whether [the plaintiff] is entitled to offer evidence to support the claims." *Id.* (quotation omitted). Because the Plaintiffs have pleaded facts that more than meet their burden of proof, the government's motion must be denied.

I. <u>The Contract at issue in this case is subject to the Contract Disputes Act.</u>

In its Motion to Dismiss, the government erroneously claims that the Contract giving rise to the subject right-of-way is not subject to the CDA, 41 U.S.C. § 601, *et seq.* Specifically, the government claims that the Contract falls within the exception stated in 41 U.S.C. § 602(a), which states that the CDA applies to contracts "entered into by an executive agency for – (1) the procurement of property, *other than real property in being*." *Id.* (emphasis added). The government contends that the Contract at issue here was for the procurement of "real property in being," and thus falls outside the scope of the CDA. This argument is flatly wrong and directly contrary to governing law of this Circuit, including the principal case upon which the government relies.

It is well-settled that a contract establishing a new interest in land falls well within the ambit of the CDA. *See Forman v. United States*, 767 F.2d 875 (Fed Cir. 1985) (holding the CDA applicable to a contract establishing a leasehold). The exception stated in § 602(a)(1) is limited to contracts for the procurement of pre-existing interests, such as the purchase of a building or the acquisition of an existing lease. *See, e.g., Coconut Grove Entm't Co. v. United States*, 46 Fed. Cl. 249, 253-54 (2000) (distinguishing *Forman* and holding that the government's acquisition of an existing leasehold was not subject to the CDA). Because the right-of-way created by the Contract in this case was a new interest in land, there can be no question that the Contract is subject to the CDA.

*Forman* is the seminal Federal Circuit case on this issue. There, the Court held that the CDA applied to a contract establishing a long-term lease of a privately owned building. *Forman,* 767 F.2d at 879. In analyzing the § 602(a)(1) exception, the Federal Circuit turned first to the CDA's legislative history. It found, however, that said history "contain[ed] little illuminating Congress' intended meaning of the phrase 'real property in being.'" *Forman*, 767 F.2d at 878 (noting that the committee reports were silent on the issue and that a single Congressman's comment during the floor debate on the statute was "not a sufficient explanation of the statute's purpose or meaning for it to be highly persuasive").

Finding the sparse guidance from the CDA's legislative history unpersuasive, the Federal Circuit next turned its attention to the legislative history of the Office of Federal Procurement Policy Act (the "Policy Act"), 41 U.S.C. § 401, *et seq.*, another statute that excluded contracts for the procurement of "real property in being." *Forman,* 767 F.2d at 878 (concluding that, because the CDA and the Policy Act had the same subject matter and "almost identical" language, it was appropriate to assume that Congress intended for the

relevant phrase to have the same meaning in both statutes). After reviewing the legislative history of the Policy Act – which it found "more informative" than that of the CDA – the Federal Circuit concluded that Congress intended for the exception in question to apply "to the procurement of existing interests – fees, easements, leases, etc. – and *not the initial creation of those interests*." *Id.* at 879 n.1, 879 (emphasis added). Because the contract at issue in *Forman* provided for the creation of a new interest rather than the procurement of an existing interest, the Federal Circuit held that the exception provided in § 602(a)(1) was inapplicable and that the contract was governed by the CDA. *Id.*

In other words, the Federal Circuit held that government does not acquire a property interest subject to § 602(a)(1) by entering into a contract creating a leasehold or an easement, because the interest in question *did not exist* prior to the contract. *Id.* "Thus, the Policy Act's language excluding contracts to procure 'real property in being' fails to apply to newly-created lease agreements, and they fall within the purview of that statute and of the corresponding provisions of the Contract Disputes Act." *Forman*, 767 F.2d at 879. To the Federal Circuit, the dispositive question with respect to § 602(a)(1) is whether the specific property interest procured by the government is newly created by the subject contract. This rule is well-accepted. *See, e.g.*, *Spodek v. United States*, 26 F. Supp. 2d 750, 756 (E.D. Pa. 1998) (holding that the CDA applied to a contract that "create[d] a new interest in the land … [rather than] result[ing] in the acquisition [of] a preexisting interest in the land"); *Hamza v. United States*, 31 Fed. Cl. 315, 320 (1994) (applying the CDA because the lease in question established a new interest instead of procuring an existing interest).

Like the contract at issue in *Forman*, the Contract in this case created an entirely new interest in the subject property – a new right-of-way – rather than providing for the

acquisition of an existing interest. The Contract is therefore governed by the CDA, as was the contract in *Forman*. The exception stated in § 602(a)(1) is inapplicable, and the government's reliance thereon is entirely misplaced.

While it correctly identifies *Forman* as the Federal Circuit decision most relevant to the instant case, the government grossly misconstrues *Forman*'s holding. In fact, the government altogether fails to state the holding of the *Forman* case, which directly contradicts its argument here, and it likewise fails to mention the Federal Circuit's critical distinction between contracts creating a new interest in property and those that merely procure a preexisting interest. Instead, it incorrectly cites *Forman* for the principle that "the easement is an 'interest in existing … land'" and therefore not subject to the CDA. (Defendant's Motion at 4 (quoting *Forman*, 767 F.2d at 879 (alteration in Defendant's Motion)).)

Rather than addressing the distinction that the Federal Circuit held dispositive in *Forman* – *i.e.*, whether the Contract created a new property interest or provided for the procurement of an existing interest – the government focuses on whether it could have acquired the relevant interest through the exercise of its eminent domain power. The only basis for this "test," however, is the lone congressional floor debate statement that the Federal Circuit expressly found to be "not a sufficient explanation of the statute's purpose or meaning." *Forman*, 767 F.2d at 878. By relying on this statement as the definitive interpretation of § 601(a)(2), the government asks this Court to adopt a position that the Federal Circuit expressly rejected. Furthermore, even if the purported eminent domain test was dispositive – and *Forman* makes clear that it is not – the fact remains that WAPA and its predecessor-in-interest could not have acquired the property interest at issue here through

eminent domain. *See, e.g.*, *Nebraska Pub. Power Dist. v. 100.95 Acres of Land in County of Thurston*, 719 F.2d 956, 961-62 (8th Cir. 1983) (holding that ordinary condemnation procedures are inapplicable to tribal land); *United States v. Winnebago Tribe of Nebraska*, 542 F.2d 1002, 1004-06 (8th Cir. 1976) (holding that, absent a clear grant of authority from Congress, the United States, acting through the Army Corps of Engineers, lacked the authority to take tribal lands by eminent domain).

II. The Plaintiffs' claims are not barred by any statute of limitations.

The government's second argument that the Tucker Act's six year statute of limitations bars the Plaintiffs' claims is equally unavailing. This argument fails for two reasons. First, the Tucker Act's statute of limitations is inapplicable because the Plaintiffs' primary claim does not invoke the Tucker Act as the basis for this Court's jurisdiction, but is instead based upon the CDA, which has no statute of limitations applicable to the Plaintiffs' claims. This reason alone is sufficient to reject the government's argument. Second, even if the Tucker Act's statute of limitations did apply to the Plaintiffs' claims, the Plaintiffs would still be entitled, under the continuing claims doctrine, at a bare minimum, to recover damages for wrongful actions occurring during the six years immediately preceding the initiation of this action.

A. *The Tucker Act's six-year statute of limitations is inapplicable.*

As stated in their Complaint, the Plaintiffs rely on the Tucker Act only as an alternative basis of jurisdiction. (*See* Complaint, ¶ 12.) The Tucker Act would be relevant only in the event that the CDA did not apply to the Contract at issue and, as shown above, the CDA is applicable. Because the Plaintiffs need not and do not rely on the Tucker Act, its statute of limitations is inapplicable and cannot serve to bar the Plaintiffs' claims. *See, e.g.*,

*Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1580 (Fed. Cir. 1987) (holding that 28 U.S.C. § 2501, which establishes the six-year statute of limitations applicable to claims brought under the Tucker Act, does not apply to claims brought under the CDA).

While the CDA has its own statute of limitations, it does not apply to the Plaintiffs' claims. The CDA's six-year statute of limitations was enacted in 1994, and it is settled law that the statute does not apply retroactively. *See Motorola, Inc. v. West*, 125 F.3d 1470, 1472-74 (Fed. Cir. 1997); *see also Sucesion J. Serralles, Inc. v. United States*, 46 Fed. Cl. 773, 783 (2000) (noting that the CDA's six-year statute of limitations does not apply to contracts entered into before October 1, 1995). Because the Contract at issue here predates the CDA's statute of limitations, CDA claims based on the Contract are "unaffected by the new six-year limitation period for filing a claim." *Id.* The government properly does not argue otherwise.

B. *Even if the Tucker Act's six-year statute of limitations did apply to the Plaintiffs' claims, it would not serve as a complete bar.*

The government next contends that the Plaintiffs' claims accrued once and finally on March 30, 2000 – more than six years before the initiation of the instant action – and are therefore barred by the Tucker Act's statute of limitations. Assuming, *arguendo*, that the Tucker Act's statute of limitations was applicable, the government's argument still would be unavailing. It is undisputed that WAPA's relevant duties include a duty to vacate the Plaintiffs' property. *See* Compl. at ¶ 39; Motion to Dismiss at 5; *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1300 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987) (holding that a requirement to vacate necessarily flows from a fixed-term lease agreement). As explained below, that duty is continuing and ongoing. Because WAPA has a continuing

and ever-present duty to vacate the Plaintiffs' property, the Plaintiffs, at a bare minimum, have stated a continuing claim and are entitled to recover "damages stemming from those breaches which occurred in the six years immediately preceding the filing of suit." *Mitchell v. United States*, 10 Cl. Ct. 787, 788 (1986); *see also Baka v. United States*, 74 Fed. Cl. 692, 696 ( 2006) (holding that the continuing claims doctrine "applie[s] when the Government owes a continuing duty to a plaintiff" (internal quotation omitted)); *Central Pines Land Co. v. United States*, 61 Fed. Cl. 527, 537 (2004) ("[A] continuing claim exists in cases where the defendant owes the plaintiff an ever-present duty … ." (citing *Mitchell*, 10 Cl. Ct. at 789)).

This Court's opinions in *Mitchell* are instructive on the continuing claims doctrine's applicability to the instant case. In *Mitchell*, a group of Quinault Indian allottees and the Quinault Tribe (collectively, the "Quinault") brought suit under the Tucker Act seeking damages for the Bureau of Indian Affair's ("BIA") mishandling of timber resources on tribal and allotted land. One group of the Quinault's claims (the "regeneration claims") involved the BIA's breach of its duty to manage Quinault Reservation timber on a sustainable yield basis by, *inter alia*, replanting tracts of timber after logging activity. *Mitchell v. United States*, 10 Cl. Ct. 63, 66 (1986), *modified upon reconsideration in Mitchell*, 10 Cl. Ct. at 787. The BIA interpreted its duty to replant as one that arose once and for all at the conclusion of logging. *Mitchell*, 10 Cl. Ct. at 788. Under this view, if logging activity on a particular tract had concluded more than six years prior to the initiation of the Quinault's suit, the Quinault's regeneration claim for failure to replant was time-barred and no recovery was available. *Id.* As it was undisputed that much of the timber harvesting at issue had occurred more than six years prior to the initiation of the Quinault's action, the government moved to dismiss on statute of limitations grounds. *See Mitchell*, 10 Cl. Ct. at 66.

The court rejected the government's argument, holding instead that the BIA's duty to replant was a continuing and "ever-present" duty and that "the non-performance of the duty [was] properly viewed as giving rise to a series of actionable wrongs." *Mitchell*, 10 Cl. Ct. at 788-89. The existence of this continuing duty "mean[t] that on each day the BIA failed in its duty to regenerate a given stand, there arose a new cause of action. And those causes of action which arose in the six-year limitations period may be sued upon." *Id.* at 788. The court adopted this approach because it "prevent[ed] the BIA from acquiring, in effect, a prescriptive right to ignore" its obligations simply because it had already done so for more than six years. *Id.*

The *Mitchell* court reached a different result with respect to the Quinault's claims that the BIA failed to obtain adequate prices for timber harvested on Quinault land (the "stumpage claims"). The duty to obtain an adequate price for timber, the court concluded, arose once and for all at the time of sale; the subsequent failure to make the Quinault whole was a continuing effect of the original wrong, not a continuation of the wrong itself. *Id.* at 789. This made the stumpage claims distinguishable from the regeneration claim, where the BIA, by failing to replant harvested timber, continued unabated in its original wrongful activity. *Id.*

The *Mitchell* court's treatment of the Quinault's various claims sheds considerable light on the instant case. Like the BIA's duty to replant, WAPA's duty to vacate the Plaintiffs' property is "ever-present" and ongoing. It is not, like the BIA's duty to obtain the appropriate price for the sale of timber, a discrete duty that arises once and only once at a single point in time. WAPA's continued failure to vacate the property constitutes a continuation of its original wrong and thus "is properly viewed as giving rise to a series of

actionable breaches." *Mitchell*, 10 Ct. Cl. at 789. To hold otherwise would be to give WAPA a "prescriptive right" to ignore its duty to vacate and to indefinitely continue its uncompensated, unlawful occupation of the Plaintiffs' property. Whatever limits the statute of limitations might place upon the Plaintiffs' ability to recover damages, it certainly does not mandate that WAPA's wrongful conduct be rewarded with what would essentially amount to permanent ownership of the Plaintiffs' land.

The government's claim that the Tucker Act's statute of limitations mandates the dismissal of the Plaintiffs' Complaint is thus unavailing. Even if that statute of limitations were applicable to the Plaintiffs' claims – which it is not – the Plaintiffs would still be entitled to recover for WAPA's continuing breaches of its duty to vacate during the six years immediately preceding the initiation of this action.

*Brown Park Estates*, cited extensively by the government in its motion, is entirely consistent with this result. There, a group of property owners alleged that the Department of Housing and Urban Development ("HUD") had wrongfully failed to adjust the rental rates for certain "Section 8" housing, with the result being that the property owners received lower periodic rent payments. *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1451-52 (Fed. Cir. 1997). The Federal Circuit held that the continuing claims doctrine was inapplicable because HUD's duty to adjust the rental rate arose only once, at a specific point in time, and that the property owners' subsequent failure to receive higher rents was simply an ongoing consequence of the initial wrongful action. *Id.* at 1459. The Federal Circuit expressly distinguished the situation in *Brown Park Estates* from the regeneration claims in *Mitchell*, noting that the BIA's continued failure to satisfy its duty to regenerate

resulted in a series of "separate and distinct breaches" constituting an actionable, continuing claim. *Id.*

Like the regeneration claim in *Mitchell*, the Plaintiffs' claim here is easily distinguished from those of the property owners in *Brown Park Estates.* There, HUD's failure to adjust rental rates was a distinct, discrete wrong, and the "later adverse effects" – lower rental payments to property owners – did not constitute a repetition or continuation of that initial wrong. Here, as in *Mitchell*, the duty at issue is "ever-present" and continuing. WAPA's continued presence on the Plaintiffs' land is not a "later adverse effect[]" of WAPA's wrongful conduct – it is a continuation of the wrongful conduct itself. By failing to vacate the Plaintiffs' property yesterday, today, and tomorrow, WAPA repeats and continues the same wrong that it committed when it failed to vacate the property on March 30, 2000. The result, as it was in *Mitchell*, is "a series of actionable breaches" subject to the continuing claims doctrine. The government's argument to the contrary is wholly without merit.

## CONCLUSION

The government's argument has two fatal flaws. Because the property interest at issue here was initially created by the subject Contract, the Federal Circuit's *Forman* opinion compels the conclusion that the Contract is subject to the CDA. The Tucker Act – and it's statute of limitations – is thus inapplicable, and the government's argument fails entirely. Even if the Tucker Act's statute of limitations were applicable, however, the continuing claim doctrine would still enable the Plaintiffs to recover for WAPA's ongoing, continuing wrongful conduct in the six years prior to the initiation of this action. The Court's jurisdiction thus being established, the government's motion should be denied.

This 28th day of August, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
Email: cmunson@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

GREGORY G. KATSAS
Acting Assistant Attorney General
JEANNE E. DAVIDSON
Director
MARK D. MELNICK
Assistant Director
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, Eighth Floor
Washington, D.C. 20530

This 28th day of August, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
Email: cmunson@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiffs*