IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 08-354C (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiffs have filed an opposition to our motion to dismiss for failure to comply with the Court's statute of limitations, asserting that the "contract and grant of easement" in this case, obtained in 1949, is a contract covered by the Contract Disputes Act, 41 U.S.C. § 601, et seq., ("CDA") because the real property interest it obtained was not yet "in being" when the easement was created. Plaintiffs further argue that, even if the contract were not covered by the CDA and were, instead, subject to the Tucker Act's (28 U.S.C. § 1491) six-year statute of limitations, the alleged contractual violation that occurred when the Government failed to vacate plaintiffs' property upon the expiration of the easement, was continuing, thereby extending the statute of limitations. Both arguments are flawed. The CDA does not apply to contracts for procurement of "real property in being," and the "contract and easement" here is plainly such. Moreover, the law makes clear that any claim for violation of the contract was perfected at the time it expired and no new acts occurred to reset the statute of limitations.

## ARGUMENT

### I. The Contract Here Is Not Subject To The CDA

The first issue presented to the Court may be crystallized as to whether the "contract and grant of easement" here procured "real property in being," as that phrase is used in the CDA. See 41 U.S.C. § 602(a). Plaintiffs' argument, that the CDA applies unless the easement agreement, itself, was pre-existing, see Pl. Opp. 5[1], ignores the actual text of the CDA, ignores its legislative history, and misconstrues the seminal case upon the matter, Forman v. United States, 767 F.2d 875 (Fed. Cir. 1985).

We turn first to the actual language of the CDA, which provides that the CDA is inapplicable to contracts procuring "real property in being." 41 U.S.C. § 602(a). The "real property in being" procured here was the property right to place power transmission towers across a defined portion of plaintiffs' land. This property right, of course, existed prior to the "contract and grant of easement," it merely had not yet been carved from plaintiffs' other rights to the property in order to be granted to the United States. Thus, the "contract and grant of easement" at issue in this case was the vehicle for obtaining the "real property in being," not the property interest procured in the first place.

The legislative history of the Office of Federal Procurement Policy Act (which is parallel to the CDA), as quoted by the court of appeals in Forman, supports this reading, providing, in relevant part, that: "the acquisition of a fee, easements, leases, or other interests in existing buildings and land would not be subject to [the Policy Act]." 767 F.2d at 879 (quoting S.Rep.

[1] "Pl. Opp. __" refers to a page of "Plaintiffs' Brief In Opposition To Defendant's Motion To Dismiss."

No. 93-692, 93d Cong., 2d Sess. (1974)), reprinted in U.S. Code Cong. & Ad. News 4589, 4599). The contract at issue in this case was for the "acquisition of . . . [an] easement . . . in existing . . . land," id., thus, the legislative history provides that it was not intended to be covered by the CDA. The only history in the legislative record explaining why the CDA excluded "real property in being" from its ambit is the statement that property procurement that could be accomplished by exercise of the eminent domain power was not intended to be covered by the CDA. Forman, 767 F.2d at 878. While plaintiffs properly note that the court of appeals considered this legislative history to be somewhat sparse, see Pl. Opp. 5 citing 767 F.2d at 878, that does not mean that it should be ignored. Indeed, the court of appeals made a point of noting that its interpretation of the CDA "comport[ed]" with the statement regarding eminent domain power. 767 F.2d at 879.

Although we demonstrated in our earlier motion that easements could be obtained through eminent domain, while leases could not (thus supporting our interpretation of the CDA as excluding easements), plaintiffs make the mistaken argument that eminent domain could not be utilized to obtain easements over Indian land. See Pl. Opp. 7-8. This argument is flawed because our interpretation of the CDA's language to exclude easements is not based upon the exceptional case presented by plaintiffs as Native Americans, but by the general powers of the Government to utilize eminent domain to obtain easements. Moreover, plaintiffs cite two inapposite cases for the proposition that eminent domain would not be available to the Government in their circumstance: Nebraska Public Power District v. 100.95 Acres of Land in County of Thurston, 719 F.2d 956, 961-62 (8th Cir. 1983), and United States v. Winnebago Tribe of Nebraska, 542 F.2d 1002, 1004-06 (8th Cir. 1976). See Pl. Opp. 8. The relevant portion of

Nebraska Public Power merely stands for the proposition that a state utility cannot condemn Indian tribal land. 719 F.2d at 962. Winnebago Tribe stands for the proposition that the general availability of eminent domain to the Federal Government does not necessarily allow its exercise in contravention to treaties with Indian tribes. 542 F.2d at 1004. What plaintiffs fail to recognize is that Congress explicitly authorized the Department of the Interior to exercise eminent domain powers as needed here. Public Law 764, ch. 630, 56 Stat. 1011, Oct. 28, 1942 (providing for the acquisition of Indian Lands for the Parker Dam Power Project).[2]

Finally, we turn to plaintiffs' quotation of Forman and subsequent cases in this Court and elsewhere purporting to support their assertion that the CDA should apply to easements. Plaintiffs quote a portion of Forman for the proposition that the court of appeals held that the initial creation of an easement was to be subject to the CDA. Pl. Opp. 6 (quoting 767 F.2d at 879). We anticipated the use of this quotation in our earlier brief, and, as we demonstrated earlier, this is not consistent with the legislative history of the CDA or the Office of Federal Procurement Policy Act. Moreover, the quotation is merely a paraphrase of a Senate report that does not actually state that the initial creation of an easement is subject to the CDA. See 767 F.2d at 879 (quoting S.Rep. No. 93-692, 93d Cong., 2d Sess. (1974)), reprinted in U.S. Code Cong. & Ad. News 4589, 4599). This paraphrase is merely dicta, because the portion of this paraphrase regarding easements is not at all relevant to the court of appeals's actual holding that a leasehold interest must be obtained through agreement, cannot be obtained by eminent domain,

[2] For the Court's convenience, we have attached Public Law 764 to this brief because it has not been codified into the United States Code. We have also attached the September 21, 1949 Resolution by the Salt River Pima-Maricopa Indian Community Council, which states that the easement at issue here was for purposes of the Parker Dam Power Project.

and is inherently contractual, thus, subject to the CDA. 767 F.2d at 879. Plaintiffs are incorrect when they assert that the court of appeals "held" that the CDA applied when the Government entered into a contract "creating a leasehold or easement;" Pl. Opp. 7; the court of appeals holding was limited to a contract creating a leasehold. 767 F.2d at 879. Plaintiffs' citation to Spodek v. United States, 25 F.Supp.2d 750 (E.D. Pa. 1998), see Pl. Opp. 6, is of little moment because that case merely cites Forman for the proposition that real estate leases are subject to the CDA. See 25 F.Supp.2d at 755-56. Likewise, this Court's decision in Hamza v. United States, 31 Fed. Cl. 315 (1994), also cited by plaintiffs, see Pl. Opp. 6, adds nothing to the holding of Forman, which it cites for the proposition that leases are subject to the CDA. 31 Fed. Cl. at 320.

## II. Plaintiffs' Tucker Act And Indian Tucker Act Claims Were Brought After The Statute Of Limitations Lapsed

In our earlier motion to dismiss, we explained that plaintiffs' claims (if any) accrued when the period of the easement expired and the United States had not vacated plaintiffs' land. Because this contract breach allegedly occurred on March 30, 2000, plaintiffs' lawsuit, filed more than seven years after the alleged breach, is outside of the Tucker Act's six-year statute of limitations. See 28 U.S.C. § 2501. Plaintiffs' response, that the alleged contractual violation by the United States was "continuing," see Pl. Opp. 9-13, misconstrues the law describing a continuing claim and relies upon circular reasoning.

The definitive case in this circuit regarding continuing claims is Brown Park Estates-Fairfield Development Co. v. United States, 127 F.3d 1449 (Fed. Cir. 1997). Plaintiffs barely discuss it, see Pl. Opp. 12-13, and never address the test that it set forth, which is that a "continuing harm" only occurs when a "claim could be broken down into a series of independent and distinct wrongs or events." 127 F.3d at 1457. In the subsequent case of Ariadne Fin. Servs.

Pty. Ltd. v. United States, 133 F.3d 874 (Fed. Cir. 1998), the court of appeals made clear that the breach of a contractual duty, even though that duty carried on into later years (as alleged here), should be considered to begin the running of the statute of limitations. 133 F.3d at 879. The alleged contractual breach in this case occurred when the United States failed to vacate plaintiffs' land when the term of the contract and easement expired. They alleged no further "independent and distinct wrongs or events," Brown Park Estates, 127 F.3d at 1457, except for the alleged breach of a "continuing duty." Pl. Opp. 10. Thus, rather than point to independent and distinct events, plaintiffs allege that they meet the Brown Park Estates test for proving a continuing duty because there was a continuing duty here. Such circular logic is particularly unpersuasive.

Plaintiffs' reliance upon Mitchell v. United States, 10 Cl. Ct. 787 (1986), also fails to advance their case. In Mitchell, the continuing duty that was breached was one imposed by a statute that, by its terms, required the Government to maintain tracts in a state of "continuous productivity" and plant trees "whenever necessary" to achieve that end. 10 Cl. Ct. at 788. Here, the contract imposed no explicit continuing duty. Instead, any contractual duty to vacate plaintiffs' property (a duty which we only concede for purposes of this motion) exists only "upon expiration of the lease." See Prudential Insurance Company of America v. United States, 801 F.2d 1295, 1298-99 (Fed. Cir. 1986).

Although plaintiffs argue that application of the statute of limitations would "give WAPA a 'prescriptive right' to ignore its duty to vacate and to indefinitely continue its uncompensated, unlawful possession of the Plaintiffs' property," Pl. Opp. 12, this argument is unpersuasive, to say the least. Plaintiffs are pursuing a concurrent lawsuit in the United States District Court for

the District of Arizona, alleging the same facts as here, excepting the theory of recovery, which is trespass. We know of no damages from the alleged breach of contract here that are not potentially recoverable in plaintiffs' trespass action;[3] indeed, the court of appeals has noted "the greater ease and efficacy in obtaining noncontractual relief as a result of holding over." Prudential Insurance, 801 F.2d at 1299. Thus, while plaintiffs complain that application of statute of limitations to the breach of contract claim will permit the Government's alleged unlawful possession of its property, in reality, the alleged unlawful possession of their property is most directly addressed by their separate trespass lawsuit.

## CONCLUSION

For the foregoing reasons and those in our earlier motion to dismiss, we respectfully request that the Court grant the Government's motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark D. Melnick
MARK D. MELNICK
Assistant Director

[3] To the contrary, compared to a tort action, the damages authorized for allegedly breaching the contract are quite circumscribed. Prudential Insurance, 801 F.2d at 1300.

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

Attorneys for Defendant

September 15, 2008